IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ER ADDISON LLC et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-02927-E |
| | § | |
| BLUE CROSS BLUE SHIELD OF TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Blue Cross Blue Shield of Texas (BCBSTX)'s Partial Motion to Dismiss, which seeks to dismiss Plaintiffs' claims that relate to the Employee Retirement System of Texas (ERS) and Teacher Retirement System of Texas (TRS). (ECF No. 77). The Parties have stipulated to dismiss the claims that relate to the ERS, such that only the TRS insurance claims[1] remain at issue for the Motion to Dismiss. (ECF Nos. 89; 96). Having carefully considered the motions; the Parties' briefing; appendices; and the applicable law, for reasons that follow, the Court denies BCBSTX's Motion to Dismiss.

### I. BACKGROUND

This case involves a dispute regarding insurance payments. (*See* ECF No. 75). Plaintiffs are seven free-standing emergency centers and their associated physician groups, which the Parties refer to collectively as "FECs." (*See* ECF No. 75). BCBSTX is an insurance provider that contracted with, *inter alia*, the Teacher Retirement System of Texas (TRS) to provide health plan

---

[1] The Court refers to these remaining TRS-related insurance claims colloquially as "TRS insurance claims" or "TRS claims."

administrative services. (ECF No. 78 at 25-92). This agreement resulted in the Texas School Employees Uniform Group Health Coverage Program—referred in the agreement as "TRS-Activecare" or the "Program." (ECF No. 78 at 25-26).

As amended, Plaintiffs' assert BCBSTX has "systemically underpa[id] [Plaintiffs] for the life-saving care they provide[.]" (ECF No. 75 at 1). Plaintiffs plead that "[BCBSTX] owes Plaintiffs for its violation of state and federal law requiring it to properly and timely process and pay claims for emergency care service provided by Plaintiffs to [BCBSTX] insureds." (ECF No. 75 at 2). Plaintiffs have asserted claims based on (i) violations of the Employment Retirement Income Security Act ("ERISA"); (ii) breach of contract as to non-self-funded ERISA plan claims; (iii) and negligent misrepresentation as to non-self-funded ERISA plan claims. (ECF No. 75 at 22-72).

On June 26, 2023, BCBSTX moved to dismiss some of Plaintiffs' claims—those that related to the ERS or TRS—based on Federal Rule of Civil Procedure 12(b)(1), which covers dismissal for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). BCBSTX argues (i) that Plaintiffs' exclusive remedy is through the TRS's administrative process and (ii) that BCBSTX is immune from suit. (ECF No. 77). Plaintiffs responded to the Motion to Dismiss. (ECF No. 81), and Defendants have replied, (ECF No. 83). The Parties thereafter stipulated the dismissal of claims relating to the ERS. (ECF Nos. 89; 96). However, the TRS insurance claims—relating to claims under TRS-ActiveCare—remain a pending issue. (ECF No. 96 at 3); (ECF No. 78 at 25-26, *et seq.*). Having been fully briefed, the Motion to Dismiss is ripe for adjudication.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144,

151 (5th Cir. 1998). A district court properly dismisses a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). A court may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). If the party merely files its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Paterson*, 644 F.2d at 523. If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Paterson*, 644 F.2d at 523. This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012)).

A party can also make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *IBEW–NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (citing *Paterson*, 644 F.2d at 523). "A factual attack on the subject matter jurisdiction of the court . . . challenges the facts on which

jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Vinmar Overseas*, 2012 WL 3599486, at *4 (quoting *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981)). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977)). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413 (quoting *Mortensen*, 549 F.2d at 891). The plaintiff in a factual challenge, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

### III.   ANALYSIS

Here, BCBSTX asserts only a factual attack against Plaintiffs' claims relating to the TRS. (ECF No. 77 at 7). BCBSTX's argument that the Court lacks jurisdiction as to the TRS-related claims is twofold. First, BCBSTX argues that the only remedy available as to these claims is administrative—referring to the Texas Administrative Code. Second, BCBSTX argues it is immune from suit under the Eleventh Amendment and sovereign immunity. The Court next addresses each of these arguments.

### A. Whether Plaintiffs' Exclusive Remedy for TRS Claims is Through Administrative Process

Defendants argue that the TRS plans have a "mandatory and exclusive administrative process for payment or benefit disputes"—relying on 34 Texas Administrative Code § 41.50. (ECF No. 77 at 10-11). In response, Plaintiff argues that the TRS administrative process is not an exclusive remedy. (ECF No. 81 at 3-4).

Texas Administrative Code § 41.50 provides, in pertinent part:

(a) For appeals that relate to claims or other benefits, the following procedures apply:
> (1) *A person enrolled in TRS-ActiveCare*, other than a person enrolled in a health maintenance organization (HMO) participating in TRS-ActiveCare, *who is denied payment of a claim or other benefit ("Claimant")* ***may*** *appeal the denial through a written request filed with the administering firm in accordance with procedures established by the administering firm.*
> (2) The final decision by the administering firm or by any external review organization, whichever occurs later, shall be the final decision on the appeal.

34 Tex. Admin. Code § 41.50 (emphasis added in italics and bold italics). In *Piney Woods ER III, LLC v. Blue Cross & Blue Shield of Texas*, a district court addressed a similar argument from BCBSTX regarding the exclusivity of administrative remedy for TRS-related insurance claims. No. 5:20-CV-00041-RWS, 2022 WL 4004790, at *10 (E.D. Tex. Mar. 17, 2022). The *Piney Woods* court explained:

> Regarding claims under TRS plans, the TRS Act provides an administrative procedure for "appeals that relate to claims or other benefits." *See* 34 TEX. ADMIN. CODE § 41.50(a). Defendant cites no authority to support the proposition that, because the TRS Act has an administrative process but no provision for an appeal to a district court, the TRS Act has exclusive jurisdiction for Plaintiffs' TRS claims. The Court is to "look [at] whether the Legislature has enacted express statutory language indicating that the agency has exclusive jurisdiction or, if not, whether a 'pervasive regulatory scheme' nonetheless reflects legislative intent that an agency ha[s] the sole power to make the initial determination in the dispute." *Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11, 30 (Tex. App. 2013) (quoting *Thomas v. Long*, 207 S.W.3d 334, 339–40 (Tex. 2006)). Unlike the ERS Act, the TRS Act contains no express statutory language indicating the Legislature's intent to create exclusive jurisdiction. Nor does the TRS Act's scheme reflect the intent for the TRS to be the sole authority to handle disputes.

*Piney Woods*, 2022 WL 4004790, at *10. Similar to in *Piney Woods*, BCBSTX directs the Court to no authority to support the proposition that—because the TRS Act (i) expressly provides an administrative procedure (Texas Administrative Code § 41.50) but (ii) provides no provision for an appeal to a district court—the TRS Act therefore proscribes the exclusive remedy for Plaintiffs'

TRS claims. (*See* ECF No. 77 at 10-11); *see generally* 34 Tex. Admin. Code § 41.50(a)(1). As written in the statute, the right to permissive appeal—"a person enrolled in TRS-Activecare . . . who is denied payment of a claim or other benefit . . . *may* appeal"—does not otherwise preclude other remedies. 34 Tex. Admin. Code § 41.50(a)(1). In reply, BCBSTX directs the Court to look at whether the Texas Legislature has enacted express statutory language indicating the agency has exclusive jurisdiction. (*See* ECF No. 83 at 7-9). However, no such express language regarding exclusive jurisdiction exists. *See generally, e.g.*, 34 Tex. Admin. Code § 41.50. Next, BCBSTX directs the Court to review whether a "pervasive regulatory scheme" nonetheless reflects legislative intent that an agency has the sole power to make the initial determination in the TRS claims dispute. (*See* ECF No. 83 at 7-9). But, no such regulatory scheme exists. For those reasons, the Court agrees with the reasoning in *Piney Woods*, reproduced above; the Court concludes remedy for Plaintiffs' TRS claims through the TRS Act's administrative process is not exclusive. *Piney Woods*, 2022 WL 4004790, at *10; *see* 34 Tex. Admin. Code § 41.50. Consequently, BCBSTX's motion to dismiss Plaintiffs' TRS claims on this basis is DENIED.

   B. **Whether BCBSTX is Entitled to Immunity on TRS Claims**

BCBSTX argues that because it has contracted with TRS as a claims administrator, it is therefore "immune from suit under the Eleventh Amendment and principles of sovereign immunity"—relying largely on *Kirby v. Health Care Serv. Corp.*, 88 F. Supp. 3d 717, 723 (W.D. Tex. 2015). (ECF No. 77 at 11). In response, Plaintiffs assert BCBSTX is not entitled to any such immunity. (ECF No. 81 at 4-8).

> The Eleventh Amendment provides:
>
> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Unless immunity is waived by Congress or a state, the Eleventh Amendment bars suit in federal court by a private citizen against a state agency or a state actor in her official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] no different from a suit against the State itself").

Here, as in *Kirby*, BCBSTX argues it is an instrumentality of the state—entitled to sovereign immunity. In *Kirby*, a district court determined BCBSTX was a state instrumentality shielded by state sovereign immunity through the Eleventh Amendment. *Kirby*, 88 F. Supp. 3d at 723.[2] First, the *Kirby* court explained the application of Eleventh Amendment immunity to certain state agents and state instrumentalities:

> It is well-settled Eleventh Amendment immunity applies not only to actions where a state is actually named as a defendant, but also to "certain actions against state agents and state instrumentalities." *Regents of the Univ. of Calif. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). Eleventh Amendment immunity has been extended to state agents and instrumentalities where granting immunity "protect[s] the state treasury from liability that would have [ ] essentially the same practical consequences as a judgment against the State itself." *Lake Cnty. Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (citing *Ford Motor Co. v. Dep't of Treas.,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). In determining whether a state instrumentality may invoke immunity, "courts must review the relationship between the state and the entity in question, examining the essential nature of the proceeding, the nature of the entity created by state law, and whether a money judgment against the instrumentality would be enforceable against the state." *Sw. Bell Tel. Co. v. City of El Paso,* 243 F.3d 936, 938 (5th Cir. 2001).

---

[2] In *Kirby*, the Court explained that Defendant Health Care Service Corporation is "known as Blue Cross Blue Shield of Texas (BCBS), the administrator of her TRS insurance plan (TRS Plan or Plan)." *Kirby v. Health Care Serv. Corp.*, 88 F. Supp. 3d 717, 718 (W.D. Tex. 2015).

*Kirby*, 88 F. Supp. 3d at 720. The *Kirby* court explored the determination of whether an entity qualifies as a state instrumentality in the Eleventh Amendment context—the six *Clark* factors:

> The Fifth Circuit has further refined the analysis, suggesting examination of a variety of factors: **(1)** whether state statutes and case law view the entity as an arm of the state; **(2)** the source of the entity's funding; **(3)** the entity's degree of local autonomy; **(4)** whether the entity is concerned primarily with local as opposed to statewide problems; **(5)** whether the entity has the authority to sue and be sued in its own name; and **(6)** whether the entity has the right to hold and use property. *City of El Paso,* 243 F.3d at 938 (citing *Clark v. Tarrant Cnty.,* 798 F.2d 736, 744–45 (5th Cir.1986)). The second factor—the source of the entity's funding—is the weightiest factor. *Id.* (citing *Doe,* 519 U.S. at 429, 117 S.Ct. 900).

*Kirby*, 88 F. Supp. 3d at 720 n.2. (emphasis added in bold). The Court agrees with the *Kirby* court's restatements of the law, above.

The remaining question before this Court is whether BCBSTX is entitled to sovereign immunity as an instrumentality of the state. The *Kirby* court determined BCBSTX was an instrumentality of TRS (and therefore Texas) for three reasons. First, the *Kirby* court determined that agreement caused BCBSTX to be subordinate to TRS:

> [A]lthough the Agreement disclaims an agency relationship between BCBS and TRS, BCBS does not have a great deal of autonomy thereunder. The Agreement provides "TRS has final decision-making authority and discretion to determine and interpret the intent, scope, design, meaning, and implementation" of the TRS Plan, "including but not limited to the issue as to whether or not coverage exists under [the TRS Plan] in a particular situation." *Id.* at 14–15. Further, BCBS's role is to "assist TRS" and to "execute, apply, and carry out TRS decisions and guidelines." *Id.* at 15. It thus appears to the Court the relationship between BCBS and TRS is such that BCBS is subordinate to TRS, and BCBS's decisions may at any time be overridden by TRS. ***The buck stops with TRS, not with BCBS, concerning all decisions related to the Plan.***

*Kirby*, 88 F. Supp. 3d 717, 721–22 (emphasis added in bold italics). Second, the *Kirby* court determined the indemnity clause in its record did not resolve the immunity question:

> [A]s the Supreme Court has held "[t]he Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." *See Doe,* 519 U.S. at 431, 117 S.Ct. 900. Additionally, the factual

> scenario the *Barron* court confronted was different than the one before the Court in a manner relevant to application of the indemnity clause: *Barron* was a qui tam action under the False Claims Act in which the relators alleged the Medicaid intermediary acquiesced in fraudulent billing practices, *see Barron,* 381 F.3d at 439, while here, there is no allegation of fraud or wrongful conduct.

*Kirby*, 88 F. Supp. 3d at 722. Third, the *Kirby* court determined that, indemnity notwithstanding, an "allegedly wrongful failure to pay a claim . . . would be a liability . . . of TRS"—thereby implicating the state treasury:

> Finally, setting the indemnity clause aside, it appears under the Agreement, any judgment in this case would be the legal responsibility of TRS. The Agreement provides the "[Trust] Fund will be solely responsible for all funding, payments, and liabilities that are associated with or are the responsibility of TRS–ActiveCare." ASA at 11. Further, as noted above, ***TRS is ultimately responsible for decisions concerning whether coverage exists under the Plan under a particular scenario, and "TRS is ultimately responsible and liable for payment of Claims."*** *Id.* at 15. As this suit concerns allegedly wrongful failure to pay a claim, any judgment in this case would be a liability "associated with or ... the responsibility of" TRS. Accordingly, the Court finds a judgment against BCBS would be the responsibility of TRS, and thus, would implicate the state treasury.

*Kirby*, 88 F. Supp. 3d at 722 (emphasis added in bold italics).

Here, like in *Kirby*, BCBSTX has attached its agreement with TRS, which resulted in the TRS-Activcare Program (TRS Contract). (ECF No. 78 at 25-92). The TRS Contract provides, in pertinent part:

> *"Plan" or "Plans" mean the health benefit plan(s) offered under the Program.* The Plan(s) are to be described in the summary plan descriptions to be prepared in accordance with applicable law, along with any amendments or changes thereto as TRS shall adopt from time to time. Notwithstanding anything to the contrary above, these terms do not refer to any health benefits offered by a health maintenance organization (HMO).
> *"Program"* means the Texas School Employees Uniform Group Health Coverage Program (also known as TRS-ActiveCare).
> . . . .
> *"Services"* means the services, goods, and property [BCBSTX] is required to provide in the Contract. The term includes the entire completed undertaking and the various separately identifiable parts. The term also includes all duties of [BCBSTX].

. . . .

"*Trust*" means the Texas School Employees Uniform Group Coverage Trust Fund established in Subchapter G of Chapter 1579 of the Texas Insurance Code.

. . . .

**SUPERINTENDENCE BY [BCBSTX]**

7.1 *Subcontractors*. [BCBSTX] may not subcontract the work or obligations due under this Contract for Core Services without the prior written approval of TRS. *Core Services include claim adjudication*, customer services, network management, and utilization management.

. . . .

9.1 *Assignment*. Contractor shall not assign its rights under the Contract or delegate the performance of Core Services (as defined in Section 7.1) under the Contract without prior written approval from TRS.

. . . .

**INDEMNIFICATION**

22.1 [*BCBSTX*] *INDEMNITY. [BCBSTX] SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE STATE OF TEXAS AND TRS AND THE PROGRAM*, AND THEIR OFFICERS, AGENTS, EMPLOYEES, REPRESENTATIVES, CONTRACTORS, ASSIGNEES, AND DESIGNEES, *FROM ANY AND ALL LIABILITY, ACTIONS, CLAIMS, DEMANDS, OR SUITS, AND ALL RELATED COSTS, ATTORNEY FEES, AND EXPENSES ARISING OUT OF, OR RESULTING FROM ANY ACTS OR OMISSIONS OF [BCBSTX]* OR ITS AGENTS, EMPLOYEES, SUBCONTRACTORS, ORDER FULFILLERS, OR SUPPLIERS OF SUBCONTRACTORS *IN THE EXECUTION OR PERFORMANCE OF THE CONTRACT* AND ANY PURCHASE ORDERS ISSUED UNDER THE CONTRACT.

. . . .

27.18 TRS Discretion and Plan Amendments. Except as otherwise required by applicable law, *TRS retains the exclusive right to determine the terms of the Plans and to amend or terminate the Plans in whole or in part, at any time and in any manner.* TRS agrees that it shall make reasonable efforts to notify Contractor of the adoption of amendments, if any, to the Plans within thirty (30) days of its adoption by TRS. Except as otherwise required by applicable law, *Contractor shall administer the Plans at all times in accordance with the terms of the Plans, including any and all changes made by TRS to the Plans*, within thirty (30) days' notice of the adoption thereof, provided that Contractor shall not be responsible for any delay in its performance or nonperformance under the Contract to the extent that the delay results because TRS fails to provide notification of such amendment(s).

. . . .

The parties hereto acknowledge and agree that pursuant to the laws of the State of Texas, *the Program is to be funded exclusively from the assets of the Texas School Employees Uniform Group Coverage Trust Fund and the assets of the Texas School Employees Uniform Group Coverage Trust Fund shall be the exclusive source for all funding of benefits, costs, payments, liabilities and expenses arising under the Program or pursuant to the Contract.*

(ECF No. 78 at 26, 31, 35, 66, 78, 86) (emphasis added in italics). BCBSTX avers that, taken together:

> The current contract between BCBSTX and TRS maintains the same allocation of authority and financial responsibility for benefits-related expenses as the contract analyzed in Kirby.[] BCBSTX remains, under the current contract, subordinate to TRS and the TRS health plans are fully funded by the state-controlled fund.[] Thus, BCBSTX remains entitled to sovereign immunity under the current contract just as it was under the prior contract analyzed in Kirby.

(ECF No. 77 at 11). The Court disagrees with BCBSTX's argument on its entitlement to sovereign immunity as (i) several operative terms of the TRS Contract do not support BCBSTX as an instrumentality of Texas, TRS, or the Program and (ii) the remaining *Clark* factors weigh against a determination of BCBSTX's entitlement to sovereign immunity.

First, the TRS Contract contains express language regarding an agency relationship between BCBSTX and TRS; as defined an agreed, BCBSTX is required to adjudicate claims in accordance with the TRS Contract as a part of BCBSTX's core services. (ECF No. 78 at 36). Second, unlike in *Kirby*, no language in the TRS Contract provides TRS has any final decision-making authority or discretion to determine claims or claim coverage. Thus, BCBSTX does not act as a "subordinate" to TRS under the terms of the TRS Contract—instead acting in "superintendence"—supervising claims determination and coverage. (*See* ECF No. 78 at 35-36).

Furthermore, unlike in *Kirby*, the Court determines that the indemnity clause in the TRS Contract, (ECF No. 78 at 66-69), assists to resolve the question of whether BCBSTX is entitled to immunity. It is undisputed that the terms of the TRS Contract's indemnification agreement requires BCBSTX to "indemnify and hold harmless the state of Texas and TRS and the Program . . . from any and all liability, actions, claims, demands or suits." (ECF No. 78 at 66). Thus—assuming *arguendo* litigation relating to the TRS Contract proceeded against Texas, TRS, or the Program—

BCBSTX would be required to indemnify and hold harmless those governmental entities. In other words, through indemnification, a judgment against BCBSTX would not result in liability for Texas, TRS, or the Program. "[A] hypothetical judgment [under the TRS Contract]. . . would likely not be paid with state funds. *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 180 (5th Cir. 2023) (rejecting an entity's argument that it was entitled to sovereign immunity under the Eleventh Amendment), *cert. denied sub nom. Springboards to Educ., Inc. v. IDEA Pub. Sch.*, 144 S. Ct. 183, 217 L. Ed. 2d 73 (2023) and *cert. denied*, 144 S. Ct. 191, 217 L. Ed. 2d 78 (2023).

BCBSTX's indemnification agreements in the TRS Contract further join into the second, weightiest *Clark* factor for determining whether an entity is a state instrumentality—the entity's funding. "The inquiry has two parts. '[F]irst and most importantly,' we examine 'the state's liability in the event there is a judgment against the defendant, and second, [we consider] the state['s] liability for the defendant's general debts and obligations.'" *Springboards*, 62 F.4th at 179 (quoting *Vogt v. Bd. of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 693 (5th Cir. 2002)) (internal quotation omitted). The Fifth Circuit explained:

> "Whether the state would be liable for a judgment depends primarily on whether it indemnifies the defendant, the degree that it funds the defendant, and the extent that it restricts the defendant's use of state-provided funds."

*Springboards*, 62 F.4th at 179. As discussed hereunder, the TRS Contract includes no agreement for Texas, TRS, or the Program to indemnify BCBSTX. To the contrary, a judgment against BCBSTX would not result in liability for Texas, TRS, or the Program due to the Parties' indemnification agreements in the TRS Contract. Next, although BCBSTX briefs that the Texas School Employees Uniform Group Coverage Trust Fund is the source of funding for the Program, BCBSTX fails to provide any briefing on BCBSTX's funding as an entity—"the source of the

*entity's* funding." *Springboards*, 62 F.4th at 178. Nothing in the record indicates what percentage BCBSTX is funded by TRS, Texas, or the Program. *See Springboards*, 62 F.4th at 180 (rejecting a defendant's argument as an instrumentality of the state despite an acclaimed 94% source of funding from state and federal resources). The above notwithstanding, BCBSTX fails to brief restrictions of BCBSTX's use of state-provided funds, and the Court has found no specific restrictions on BCBSTX's use of state-provided funds in the TRS Contract.[3] The Court concludes that the first part of the second *Clark* factor weighs against a determination that BCBSTX is an instrumentality of the state.

The second part of the second *Clark* factor—whether the state could be liable for the defendant's general debts and obligations—also weighs against BCBSTX. *See Springboards*, 62 F.4th at 179. The express terms of the TRS Contract state that TRS does not indemnify, protect, or hold harmless BCBSTX from any claims or damages:

> 22.3 TRS and Program Indemnity. Contractor understands and agrees that ***neither TRS, the Program, nor the fund associated with the Program, will indemnify, protect, defend or hold harmless Contractor*** from and against any claims, damages, losses, liens, causes of action, suits, judgments, and expenses arising out of the acts or omissions of TRS or the Program, or their respective trustees, officers, directors, employees, or agents, if any.

(ECF No. 78 at 68) (emphasis added in bold italics). Furthermore, BCBSTX directs the Court to no language in the TRS Contract that would require the state to be liable for BCBSTX's general debts and obligations. The Court determines that neither TRS, the Program, nor the fund associated with the Program[4] could be liable for BCBSTX's general debts and obligations. The Court

---

[3] The Court notes that the Parties agree generally that BCBSTX "shall implement a comprehensive plan . . . to detect and prevent" various forms of fraud, waste, and abuse. (ECF No. 78 at 74-76).

[4] The State of Texas is not an independent party or signatory to the TRS Contract. (*See generally* ECF No. 78).

concludes the second part of the second *Clark* factor weighs against a determination that BCBSTX is an instrumentality of the state.

BCBSTX does not otherwise brief the remaining five factors of the six *Clark* factors. (*See* ECF Nos. 77, 83). On this record, the Court determines: (i) neither states nor statutes view BCBSTX as an arm of the state; (ii) the TRS Contract requires BCBSTX to perform the core service of claims adjudication—thereby acting autonomously; (iii) nothing in the record supports whether BCBSTX is concerned with local as opposed to statewide problems; (iv) BCBSTX has authority to sue and be sued in its own name; and (v) BCBSTX appears to have an independent right to hold and use property. *See generally Clark*, 798 F.2d at 744–45; *see, e.g.*, *Blue Cross & Blue Shield of Tex., Inc. v. Sullivan*, No. 3-91-2760, 1992 WL 159808, at *1 (N.D. Tex. Apr. 7, 1992), *aff'd sub nom. Blue Cross & Blue Shield of Tex., Inc. v. Shalala*, 995 F.2d 70 (5th Cir. 1993) (BCBSTX suing in its own name); *Abbott v. Blue Cross & Blue Shield of Tex.*, Inc., 113 S.W.3d 753, 765 (Tex. App.—Austin 2003, pet. denied) (BCBSTX holding property as stipulated— "corporate surplus and reserves have been accumulated from policyholder premiums, administrative service fees, subrogation, and earned investment income in excess of contractual benefits paid to its policyholders and business expenses"). For the reasons discussed hereabove, the Court concludes BCBSTX is not entitled to immunity on TRS claims. BCBSTX's motion to dismiss Plaintiffs' TRS claims on this basis is DENIED.

(*This space left blank intentionally*).

## IV. CONCLUSION

For the foregoing reasons, BCBSTX's Motion to Dismiss Plaintiffs' claims involving TRS insurance claims is **DENIED**. (ECF No. 77). Furthermore, BCBSTX's Motion to Dismiss involving ERS insurance claims—for which the Parties have stipulated dismissal with prejudice, (ECF No. 89)—is **DENIED as moot**. (*See* ECF No. 77).

**IT IS SO ORDERED** this 19th day of July, 2024.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE